IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:18-cv-1046

| | |
|---|---|
| HUI MINN LEE, ) | |
|    *Plaintiff*, ) | |
| ) | |
| ) | |
| vs. ) | AMENDED COMPLAINT |
| ) | *Jury Trial Demanded* |
| ) | |
| MARKET AMERICA, INC., ) | |
|    *Defendant*. ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), N.C.G.S. §143-422.2, 42 U.S.C. §1981 and Title I of the Civil Rights Act of 1991 to provide appropriate relief to HUI MINN LEE ("Plaintiff" or "Lee"), who was adversely affected by such practices. As alleged with greater particularity below, Plaintiff alleges that MARKET AMERICA, INC. ("Defendant" or "Market America") subjected Lee to direct discrimination on the basis of age, race and her national origin, Taiwan; and retaliation for engaging in protected activity, and/or opposing race discrimination in the workplace.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, 1343 and 1367. This action is authorized and instituted pursuant to: Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e *et seq*, to Section 630 *et seq* of the ADEA, 29 U.S.C. § 630 *et seq*, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981 and N.C.G.S. §143-422.2.

1

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

## PARTIES

3. Plaintiff is a natural person and citizen of the United States, domiciled in the State of North Carolina and the City of Greensboro. At all relevant times, Plaintiff was aged more than forty (40) years old.

4. At all relevant times, Plaintiff was an employee of Defendant Market America, Inc. as defined in Section 701(f) of Title VII, 42 U.S.C. 2000e(f), N.C.G.S. §143-422.2 and Section 630(f) of the ADEA, 29 U.S.C. § 630(f).

5. At all relevant times, Defendant, a North Carolina corporation, has continuously been doing business in the State of North Carolina and the City of Greensboro including, without limitation, maintaining its registered and principal offices there, and has continuously employed at least twenty (20) employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h) and Sections 630(b), (g), and (h) of the ADEA, N.C.G.S. §143-422.2, 29 U.S.C. 630(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

7. On or about 27 March 2018 and more than thirty (30) days prior to the institution of this lawsuit, Lee filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII and the ADEA by Market America.

8. The above-given filing date, 27 March 2018 was within one hundred eighty (180) days of the conduct giving rise to this action.

9. The basis of the aforementioned charge was age, national origin and sex (gender) discrimination.

10. On or about 28 September 2018, the EEOC mailed the Plaintiff a Dismissal and Notice of Rights.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## BACKGROUND

12. In or around September 2000, Plaintiff began her employment with Market America when she was hired as a Distributor Service Representative working from the Greensboro, NC office. Her position primarily involved responsibility for distributive services' policies, rules and regulations.

13. Plaintiff is of Taiwanese origin, and speaks multiple languages, including English, Mandarin (Chinese) and Taiwanese.

14. In or around October 2002, the Defendant recognized the advantages of placing the Plaintiff in a training position because of her exemplary language skills. Thus, she was promoted to the position of Trainer in the Training and Development Department. In that capacity, the Plaintiff was responsible for developing training materials for special projects in both English and Chinese, as well as training the Defendant's employees nationally in Asia, the United Kingdom and the United States.

15. Between October 2002 and October 2017, the Plaintiff was consistently promoted within the Training and Development Department until she held the title of Global Training Project

Manager. She remained the most accomplished and highest-ranking employee in the Training and Development Department until her discriminatory discharge in October 2017.

16. Throughout her tenure with the Defendant, the Plaintiff created, developed and trained staff in the three (3) languages throughout three (3) different departments within the Defendant Company, including Distributor Service, Computer Support, and Preferred Customer Support.

17. In addition to creating, developing, and revising such trainings, Plaintiff personally conducted Distributor Service Training, PIM Training, MPCP Training (the most critical corporate-level training at Market America) in multiple languages, as well as additional trainings in Mandarin. During her tenure with Market America, Plaintiff conducted an average of thirty (30) trainings per year.

18. Plaintiff's responsibilities for said trainings expanded to include additional overseas training when Defendant commenced international operations.

19. During her tenure with Market America, Plaintiff also conducted start-up and advanced training in their international offices, which often required international travel for weeks or over one (1) month including, without limitation:

a. Taiwan Call Center Start-Up and Follow-Up Training in 2005 and 2006;

b. Creating training materials to support Market America's opening of an office in Hong Kong in 2007;

c. Philippine Call Center Start-Up Training in 2010;

d. United Kingdom Call Center Start-Up Training in 2012;

e. Singapore Call Center Start-Up Training in 2014;

f. Hong Kong and Taiwan Advanced Trainings in 2014;

g. Malaysia Call Center Start-Up Training in 2017.

20.     In or around November 2013, Defendant hired Liliana Camara ("Camara"), an employee of Colombian origin as an entry-level Spanish-speaking Training Specialist. Plaintiff was tasked with training and supervising Camara. The Plaintiff continued to assist Camara as Camara progressed into a training position.

21.     From the beginning of Camara's employment with the Defendant, she expressed discriminatory beliefs and opinions about her preference for Hispanic employees. For example, Camara informed the Plaintiff that she would "always try to take care of every Hispanic in the company" and would "despise anyone not taking care of his or her own", meaning that Camara felt it was her responsibility to "take care" of other Hispanic employees of the Defendant Company.

22.     At the same time Camara expressed a preference for Hispanic employees, she expressed her dislike for the Plaintiff. For example, and among other things, Camara negatively referred to "culture" issues between them. The Plaintiff contends that the culture differences referenced by Camara included racial and national origin issues because the Plaintiff is Taiwanese.

23.     The Plaintiff was not involved in the hiring of Camara. At the time of Camara's hire, the Plaintiff had been an employee of the Defendant for over thirteen (13) years and possessed a higher-ranking position than Camara. Camara was the Plaintiff's subordinate. Yet, the Plaintiff was required to fulfill Camara's job responsibilities during Camara's extensive absences from work.

24.     In or around August 2016, Plaintiff's then-manager, Colbert Trotter ("Trotter"), a white female, promoted Camara to supervise the Plaintiff. Prior to Camara's promotion, the Plaintiff was unaware that there was an open supervisory position. The Plaintiff contends that the

Defendant had not posted or otherwise informed its staff that an open supervisory position existed for which it was seeking applications.

25. Upon learning of Camara's promotion, the Plaintiff complained to Trotter that she should have been informed of the open position and felt Camara had been handpicked for the supervisory position. Further, the Plaintiff complained to Trotter that Camara had a discriminatory animus toward her based on race and as a result Camara would negatively affect the Plaintiff's employment. In response, Trotter agreed to retain supervisory authority over the Plaintiff and re-titled, without promoting, Plaintiff to the position of Global Training Project Manager.

26. When Trotter left the Training Department at Market America in or around November 2016, the Human Resources Director, Sherry Spesock ("Spesock"), began supervising both the Plaintiff and Camara.

27. Thereafter, in or around December 2016, while Plaintiff was taking personal time off work ("PTO"), Spesock awarded Camara a *de facto* promotion to "head" of the Training Department. Again, prior to Camara's second promotion, the Plaintiff was unaware that there was an open supervisory position. The Plaintiff contends that the Defendant had not posted or otherwise informed its staff that an open supervisory position existed for which it was seeking applications.

28. After Camara's promotion to Head of the Training Department, the Plaintiff was informed that Camara was "going to be [her] boss." Thereafter, during a meeting in December 2016, Camara stripped the Plaintiff's MPCP training responsibilities. Camara then gave those responsibilities to Henri Hue, a male of African origin who was under age forty (40) years, whom Camara had hired approximately one (1) year prior.

6

29. At the time Hue was given the MPCP training responsibilities, Hue was a junior trainer and was subordinate to the Plaintiff.

30. The Plaintiff expressed concern to Camara about this change due to the importance of the MPCP Training to Market America's business, the need for consistency in the MPCP Training, and the fact that Hue had never been trained in how to properly conduct the MPCP Training.

31. Despite the Plaintiff's concerns, Camara informed her that Hue needed to be given the opportunity to "build his network, just like [Camara] did." Camara further accused Plaintiff of lacking teamwork and being disobedient to former bosses. Camara again expressed her belief to the Plaintiff that their cultural, meaning racial, differences were problematic for Camara.

32. The Plaintiff informed Camara that prior to Camara's hire, the Plaintiff was never received a job performance evaluation below "meets expectations" on teamwork-related sections of performance evaluations and was indeed awarded ratings of "exceptional" or "exceeds expectations" on a frequent basis. Indeed, during the entirety of the time to which Camara referred, the Plaintiff had received positive performance evaluations and merit pay increases.

33. Camara also accused the Plaintiff of "dumping UFO Services Training on [Camara]" despite the Plaintiff being ordered to cease conducting UFO Services Training by Trotter in order to cover some of the duties previously held by Trotter's predecessor, Amanda Clarida.

34. Camara repeatedly described these and other problems with the Plaintiff as "cultural differences." In each instance cited by Camara, she inferred that the racial differences between she and the Plaintiff were a root source of Camara's inability to work with the Plaintiff.

35. Thereafter, in mid-December, 2016, the Plaintiff complained about Camara's conduct to Spesock. The Plaintiff informed Spesock that she believed Camara had created a hostile work environment for the Plaintiff because of the Plaintiff's race and national origin.

36. Spesock responded by informing the Plaintiff that "if [Spesock] could survive hostile environment, [Plaintiff] should be able to."

37. In or around April 2017, the Plaintiff was given a below-average merit pay increase which was considered an adverse employment action. The Plaintiff contends that she was given the below average merit pay increase in retaliation for complaining about race discrimination in the workplace because there was no legitimate business reason for doing so.

38. After Camara assumed responsibility for hiring new personnel within the Training Department, the Plaintiff began repeatedly requesting additional Mandarin-speaking trainers and employees due to the fact that the Defendant, upon information and belief, earns the majority of its revenue from Mandarin-speaking customers both domestically and internationally. In Market America's history, Mandarin-speaking training had been considered a major component of the Training Department.

39. Instead, in or around May 2017, Camara hired Delia Zepeda, a Spanish-speaking junior trainer under the age of forty (40) years and not of Taiwanese origin. Further, Zepeda could not speak Mandarin.

40. After Camara was given the authority to hire employees on behalf of the Defendant Company, Camara began consistently hiring individuals under the age of forty (40).

41. The Plaintiff contends that, based upon information and belief, Camara was aware of the efforts the Plaintiff made to complain to Spesock about the discriminatory acts of Camara. As a result, and in addition to Camara's discriminatory beliefs regarding the Plaintiff, Camara did not have a good working relationship with the Plaintiff and Camara made every effort to diminish the Plaintiff's role within the company.

42. The Plaintiff contends that the employees responsible for making decisions about her employment, including Camara and Spesock, were aware that she had engaged in protected activity by articulating her opposition to discriminatory treatment in the workplace due to her race. The Plaintiff further contends that those employees engaged in acts or actions intended to cause her to be terminated in retaliation for her engaging in said protected activity and because of her race.

43. After Zepeda's hire, Camara continued to displace the Plaintiff and diminish her role and responsibilities within the Training Department.

44. During the month of August, 2017, the Plaintiff was required to conduct training for the Defendant's Malaysian staff via teleconference. Due to the significant time difference, the Plaintiff worked late night hours through the very early morning hours. Nonetheless, Camara informed the Plaintiff that she was still expected to maintain her normal office hours of 9am-5pm in the Greensboro, NC office. In fact, Camara demanded that the Plaintiff be available to work twenty-four (24) hours, seven (7) days per week.

45. As a result of the foregoing work demands and Camara's continued discriminatory attitude toward the Plaintiff, the Plaintiff requested a leave of absence from work between the end of October through early December, 2017 using the thirty (30) days of PTO she had accumulated. The leave request was approved and the Plaintiff was scheduled to begin her leave in approximately October, 2017.

46. Notwithstanding, the Plaintiff was terminated on or about 5 October 2017 while conducting training for the United Kingdom employees. Prior to her termination, the Plaintiff had not received any warnings or progressive discipline for poor job performance.

9

Case 1:18-cv-01046-WO-JLW   Document 4   Filed 03/22/19   Page 9 of 14

47. The Plaintiff further contends that she was treated differently in terms of the conditions of her employment than similarly situated co-workers who worked under the supervision of Camara and who were under the age of forty (40) years and not of Taiwanese origin, including Hue. The Plaintiff contends that she was treated differently by Camara because of her age, and/or race, and/or national origin.

48. After the Plaintiff's termination, her position, in title, remained open. However, Henri Hue was responsible for performing the Plaintiff's job responsibilities. Hue was not of Taiwanese origin and under the age of forty (40) years.

49. The Plaintiff contends that the Defendant Company knew or should have known that Camara was subjecting the Plaintiff to discriminatory treatment in the workplace; however it failed to stop the discriminatory treatment. Further, the Defendant Company, by and through its managers and agents, had the apparent and actual authority to control Camara's behavior in the workplace; however it failed to do so. The Defendant Company's failure to eliminate the discriminatory treatment of the Plaintiff by Camara effectively condoned and ratified Camara's behavior.

50. After her termination, the Plaintiff asked Spesock if there was another position she could be transferred to within the Defendant Company, even if it required her to return to a lesser position. Despite job postings seeking applicants who possessed Plaintiff's bilingual ability and the Plaintiff's applying for those positions, the Plaintiff was never contacted. Upon information and belief, Spesock told the Translation Department Director, Jennifer Lin, to lie to the Plaintiff and state that all posted positions had been filled.

51. The Plaintiff is a member of a protected group, to wit: employees of Taiwanese origin, over the age of forty (40) years and Asian race.

52. The Plaintiff was qualified for all of the positions she held with the Defendant and consistently received positive performance evaluations reflecting that she was performing adequately and meeting Market America's expectations.

53. The Plaintiff was not terminated by Market America for an objective reason and due to no fault of her own. The Plaintiff contends that any reason given for her termination is pretextual; and that the true reason for her termination was motivated by discriminatory reasons based on her age and/or race and/or national origin, and/or in retaliation for opposing discrimination in the workplace.

54. The effect of the Defendant's conduct deprived the Plaintiff of equal employment opportunities and otherwise affected her status as an employee because of her national origin and/or race and/or age, and/or in retaliation for opposing discrimination in the workplace.

55. The unlawful practices complained of herein were intentional.

56. The unlawful practices complained of herein were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

57. The Plaintiff contends that she was subjected to an adverse employment action(s) in retaliation for opposing employment discrimination in the workplace, including but not limited to, failing to be promoted to a supervisory position in August and December 2016, receiving decreased merit pay, termination and failure to be considered for, or offered, continued employment in a different position after her termination.

58. The Plaintiff contends that all supervisors, employees and co-workers were, at all times herein, working within the course and scope of their employment and in furtherance of the employer's business. Further, pursuant to the doctrine of respondeat superior, the Defendant is vicariously liable for acts herein alleged against those co-workers, employees and supervisors.

Alternatively, the acts of the aforementioned employees may not have been within the scope of their employment. Plaintiff alleges that the employer remains liable for its negligent supervision and retention of those employees.

59. As a result of the aforementioned acts, the Plaintiff contends that she has suffered pecuniary and non-pecuniary losses, including but not limited to, humiliation, loss wages, loss benefits, future wages, mental anguish, physical sickness and personal injuries, and pain and suffering.

## COUNT ONE

The Defendant is liable to the Plaintiff for retaliating against her for engaging in protected activity and for opposing practices made unlawful pursuant to 42 U.S.C. §1981 as alleged herein.

## COUNT TWO

The Defendant is liable to the Plaintiff for race discrimination, harassment and disparate treatment based on race for acts alleged herein, including but not limited to, stripping Plaintiff of her job responsibilities, failing to promote her to open supervisory positions beginning in August 2016 and December, 2016, reduction in merit pay, wrongful termination and failing to rehire the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, and as amended in 1991, N.C.G.S. §143-422.2, and 42 U.S.C. §1981.

## COUNT THREE

The Defendant is liable to the Plaintiff for wrongful termination due to age discrimination and for subjecting her to disparate treatment due to age in the terms and conditions of her

employment as alleged herein in violation of the Title VII of the Civil Rights Act of 1964, and as amended in 1991, Age Discrimination in Employment Act ("ADEA") and N.C.G.S. §143-422.2.

## COUNT FOUR

The Defendant is liable to the Plaintiff for disparate treatment and wrongful termination due to national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, and as amended in 1991, and N.C.G.S. §143-422.2 as alleged herein.

**WHEREFORE, Plaintiff prays the Court that it:**

1. Award Plaintiff compensatory damages for pecuniary losses, physical sickness and personal injuries, emotional pain, and mental anguish, together with attorney's fees and the costs and disbursements of this action;

2. Award Plaintiff punitive damages;

3. Reinstate the Plaintiff to her previous position;

4. Award Plaintiff frontpay;

5. Award Plaintiff backpay with prejudgment interest, and affirmative relief necessary to eradicate the effects of the unlawful employment practices;

6. Grant Plaintiff a jury trial on all issues of fact, and;

7. Grant such other relief as may be just and proper.

This the 22nd day of March, 2019.

GRAY NEWELL THOMAS, LLP

BY: /s/ Angela Gray
     Angela Newell Gray
     7 Corporate Center Court, Suite B

13

Greensboro, NC  27408
*Attorney for Plaintiff*
Telephone:     (336) 285-8151
Fax:                (336) 458-9359
E-mail:          angela@graynewell.com
N.C. State Bar #21006