IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:18-cv-1046

| | |
|---|---|
| HUI MINN LEE, ) | |
|    *Plaintiff*, ) | |
| ) | |
| ) | *Plaintiff's Memorandum in Opposition* |
| vs. ) | *to Defendant's Partial Motion to Dismiss* |
| ) | *Plaintiff's Amended Complaint* |
| ) | |
| MARKET AMERICA, INC., ) | |
|    *Defendant*. ) | |

## STATEMENT OF RELEVANT FACTS

In or around September 2000, Plaintiff began her employment with Market America when she was hired as a Distributor Service Representative working from the Greensboro, NC office. Her position primarily involved responsibility for distributive services' policies, rules and regulations. Plaintiff is of Taiwanese origin, and speaks multiple languages, including English, Mandarin (Chinese) and Taiwanese. (Amended Complaint, ¶¶12-13). She was promoted to the position of Trainer in the Training and Development Department. In that capacity, the Plaintiff was responsible for developing training materials for special projects in both English and Chinese, as well as training the Defendant's employees nationally in Asia, the United Kingdom and the United States. (Amended Complaint, ¶¶14).

In or around November 2013, Defendant hired Liliana Camara ("Camara"), an employee of Colombian origin as an entry-level Spanish-speaking Training Specialist. Plaintiff was tasked with training and supervising Camara. The Plaintiff continued to assist Camara as Camara progressed into a training position. From the beginning of Camara's employment with the Defendant, she expressed discriminatory beliefs and opinions about her preference for Hispanic

1

employees. For example, Camara informed the Plaintiff that she would "always try to take care of every Hispanic in the company" and would "despise anyone not taking care of his or her own", meaning that Camara felt it was her responsibility to "take care" of other Hispanic employees of the Defendant Company. (Amended Complaint, ¶¶20-21). At the same time Camara expressed a preference for Hispanic employees, she expressed her dislike for the Plaintiff. For example, and among other things, Camara negatively referred to "culture" issues between them. The Plaintiff contends that the culture differences referenced by Camara included racial and national origin issues because the Plaintiff is Taiwanese. (Amended Complaint, ¶22).

The Plaintiff was not involved in the hiring of Camara. At the time of Camara's hire, the Plaintiff had been an employee of the Defendant for over thirteen (13) years and possessed a higher-ranking position than Camara. Camara was the Plaintiff's subordinate. Yet, the Plaintiff was required to fulfill Camara's job responsibilities during Camara's extensive absences from work. In or around August 2016, Plaintiff's then-manager, Colbert Trotter ("Trotter"), a white female, promoted Camara to supervise the Plaintiff. Prior to Camara's promotion, the Plaintiff was unaware that there was an open supervisory position. The Plaintiff contends that the Defendant had not posted or otherwise informed its staff that an open supervisory position existed for which it was seeking applications. Upon learning of Camara's promotion, the Plaintiff complained to Trotter that she should have been informed of the open position and felt Camara had been handpicked for the supervisory position. Further, the Plaintiff complained to Trotter that Camara had a discriminatory animus toward her based on race and as a result Camara would negatively affect the Plaintiff's employment. In response, Trotter agreed to retain supervisory authority over the Plaintiff and re-titled, without promoting, Plaintiff to the position of Global Training Project Manager. (Amended Complaint, ¶¶ 23-25).

Thereafter, in or around December 2016, while Plaintiff was taking personal time off work ("PTO"), Camara was awarded a *de facto* promotion to "head" of the Training Department. Again, prior to Camara's second promotion, the Plaintiff was unaware that there was an open supervisory position. The Plaintiff contends that the Defendant had not posted or otherwise informed its staff that an open supervisory position existed for which it was seeking applications. After Camara's promotion to Head of the Training Department, the Plaintiff was informed that Camara was "going to be [her] boss." Thereafter, during a meeting in December 2016, Camara stripped the Plaintiff's MPCP training responsibilities. Camara then gave those responsibilities to Henri Hue, a male of African origin who was under age forty (40) years, whom Camara had hired approximately one (1) year prior. (Amended Complaint, ¶¶ 27-28).

Prior to Camara's hire, the Plaintiff had never received a job performance evaluation below "meets expectations" on teamwork-related sections of performance evaluations and was indeed awarded ratings of "exceptional" or "exceeds expectations" on a frequent basis. During the entirety of the time to which Camara referred, the Plaintiff had received positive performance evaluations and merit pay increases. (Amended Complaint, ¶32).

Camara repeatedly described problems with the Plaintiff as "cultural differences." In each instance cited by Camara, she inferred that the racial differences between she and the Plaintiff were a root source of Camara's inability to work with the Plaintiff. Thereafter, in mid-December, 2016, the Plaintiff complained about Camara's conduct to Spesock. The Plaintiff informed Spesock that she believed Camara had created a hostile work environment for her because of her race and national origin. (Amended Complaint, ¶¶34-35).

In or around May 2017, Camara hired Delia Zepeda, a Spanish-speaking junior trainer under the age of forty (40) years and not of Taiwanese origin. Further, Zepeda could not speak

3

Mandarin. After Camara was given the authority to hire employees on behalf of the Defendant Company, she began consistently hiring individuals under the age of forty (40). The Plaintiff contends that, based upon information and belief, Camara was aware of the efforts the Plaintiff made to complain to Spesock about the discriminatory acts of Camara. As a result, and in addition to Camara's discriminatory beliefs regarding the Plaintiff, Camara did not have a good working relationship with the Plaintiff and Camara made every effort to diminish the Plaintiff's role within the company. The Plaintiff contends that the employees responsible for making decisions about her employment, including Camara and Spesock, were aware that she had engaged in protected activity by articulating her opposition to discriminatory treatment in the workplace due to her race. The Plaintiff further contends that those employees engaged in acts or actions intended to cause her to be terminated in retaliation for her engaging in said protected activity and because of her race. After Zepeda's hire, Camara continued to displace the Plaintiff and diminish her role and responsibilities within the Training Department. (Amended Complaint, ¶¶39-43).

The Plaintiff was terminated on or about 5 October 2017 while conducting training for the United Kingdom employees. Prior to her termination, the Plaintiff had not received any warnings or progressive discipline for poor job performance. The Plaintiff further contends that she was treated differently in terms of the conditions of her employment than similarly situated co-workers who worked under the supervision of Camara and who were under the age of forty (40) years and not of Taiwanese origin, including Hue. The Plaintiff contends that she was treated differently by Camara because of her age, and/or race, and/or national origin. After the Plaintiff's termination, her position, in title, remained open. However, Henri Hue was

4

Case 1:18-cv-01046-WO-JLW   Document 16   Filed 06/07/19   Page 4 of 11

responsible for performing the Plaintiff's job responsibilities. Hue was not of Taiwanese origin and under the age of forty (40) years. (Amended Complaint, ¶¶46-48).

After her termination, the Plaintiff asked Spesock if there was another position she could be transferred to within the Defendant Company, even if it required her to return to a lesser position. Despite job postings seeking applicants who possessed Plaintiff's bilingual ability and the Plaintiff's applying for those positions, the Plaintiff was never contacted. Upon information and belief, Spesock told the Translation Department Director, Jennifer Lin, to lie to the Plaintiff and state that all posted positions had been filled. (Amended Complaint, ¶50).

The Plaintiff was qualified for all of the positions she held with the Defendant and consistently received positive performance evaluations reflecting that she was performing adequately and meeting Market America's expectations. The Plaintiff was not terminated by Market America for an objective reason and due to no fault of her own. The Plaintiff contends that any reason given for her termination is pretextual; and that the true reason for her termination was motivated by discriminatory reasons based on her age and/or race and/or national origin, and/or in retaliation for opposing discrimination in the workplace. (Amended Complaint, ¶¶52-53).

**ARGUMENT**

I. **PLAINTIFF HAS PLED A CAUSE OF ACTION FOR WRONGFUL DISCHARGE/TERMINATION UNDER THE EEPA**

The purpose of Rule 12(b)(6) of the Federal Rules of Civil Procedure is to permit trial courts to terminate lawsuits "that are fatally flawed in their legal premise and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity. *De Sole v. United States*, 947 F.2d 1169, 1178 n. 13(4th Cir. 1991); *Advanced Cardivascular Sys., Inc. v. Scimed*

*Life Sys., Inc*., 988 F.2d 1157, 1160 (Fed. Cir. 1993). The court must presume that all well-pleaded allegations are true, resolve all doubts and inferences in the pleader's favor, and view the pleadings in the light most favorable to the non-moving party. *Edwards v. City of Goldsboro*, 178 F. 3d 231, 243-44 (4th Cir. 1999); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993).

Pursuant to Rule 8, a pleading is merely required to set forth "**a short and plain statement"** of the claim sufficiently particular to give the court and the parties' notice of the transactions or occurrences intended to be proved showing that the pleader is entitled to relief… Rule 8(f) states that all pleadings shall be so construed as to do substantial justice. Dismissals under Rule 12(b)(6) are disfavored and, in view of the rules' "Notice Pleading" requirements, are not routinely granted. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999).

Given the similar language and underlying policy of § 143–422.2 and Title VII, 42 U.S.C. § 2000e *et seq.,* the North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143–422.2 insofar as they do not conflict with North Carolina statutes and case law. *North Carolina Dep't of Correction v. Gibson,* 308 N.C. 131, 301 S.E.2d 78, 82–85 (1983). Thus, in order to demonstrate a prima facie case of disparate treatment[1] under § 143–422.2, a plaintiff must show by a preponderance of the evidence that: (1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) she was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. *See*

---

[1] The terminology used in numerous court opinions regarding wrongful discharge/termination claims under N.C.G.S. §143-422.2 often includes "disparate treatment", even though the third element of the prima facie claim requires discharge/termination. Hence, the use of the term in Counts Two, Three and Four of the Amended Complaint in the present case.

6

*Gibson,* 301 S.E.2d at 82–83; *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 & n. 13, 93 S.Ct. 1817, 1824 & n. 13, 36 L.Ed.2d 668 (1973); *Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511–12 (4th Cir.1993). *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995).

Plaintiff's Amended Complaint alleges that the Defendant terminated her because of her age, race and national origin in violation of North Carolina public policy as set forth in the Equal Employment Practices Act ("EEPA"), N.C. Gen.Stat. § 143–422.1, *et seq.* The EEPA provides that [i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees. "Our Supreme Court has directed that we look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." *Youse v. Duke Energy Corp.,* 171 N.C.App. 187, 193, 614 S.E.2d 396, 401 (2005) (quotations omitted) (citing *Dept. of Correction v. Gibson,* 308 N.C. 131, 136, 301 S.E.2d 78, 82 (1983)). *Johnson v. Crossroads Ford, Inc.,* 230 N.C. App. 103, 110, 749 S.E.2d 102, 107 (2013). "… we have held … that a North Carolina state cause of action for wrongful discharge is stated by a claim that an employee is separated from employment because of her sex when the cause of separation is her refusal of sexual favors to her supervisor, then, when the record indicates, as it does in this case, that her separation may have been caused because of her race, we are of opinion and hold that she has stated a cause of action under the state law of North Carolina under § 143–422.2." *McLean v. Patten Communities, Inc.,* 332 F.3d 714, 721 (4th Cir. 2003).

Based on the holding in *McLean,* Counts Two, Three and Four of the Amended Complaint should not be dismissed as to the wrongful discharge/termination claims. To be clear,

the Plaintiff does not attempt to assert in those counts a separate cause of action based solely on "discrimination, harassment, retaliation or disparate treatment" irrespective of wrongful discharge/termination.

## II.    PLAINTIFF'S CLAIM FOR RACE DISCRIMINATION UNDER TITLE VII IS PROPERLY PLED UNDER 42 USC §1981

In the present case, the Plaintiff concedes that exhaustion of administrative remedies is a prerequisite to filing a lawsuit alleging discrimination and retaliation in violation of Title VII. The Plaintiff here has also filed a claim of race discrimination and retaliation in violation of 42 U.S.C. §1981. "The remedies available under Title VII and Section 1981, although related, and directed to most of the same ends, are separate, distinct and independent." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 461, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). Like Title VII, 42 U.S.C. § 1981 prohibits, *inter alia,* "discrimination in employment on the basis of race." *Yashenko v. Harrah's NC Casino Co., LLC,* 446 F.3d 541, 551–52 (4th Cir.2006).

42 U.S.C. § 1981(a) provides: "All persons within the Jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." Section 1981(b) states: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Unlike Title VII however, there is no administrative filing requirement and the statute of limitations under 42 U.S.C. §1981 is four (4) years. *See* 28 U.S.C. § 1658. In *Johnson*, the Supreme Court emphasized that a party proceeding under §1981 is not restricted by the administrative and procedural requirements of Title VII. *See also James v. Circuit City Stores, Inc.,* 370 F.3d 417,

420–21 (4th Cir.2004)(applying four-year statute of limitations under § 1658 to claims of post-contract-formation employment discrimination under § 1981).

Based on the foregoing, the Plaintiff's race discrimination claim under 42 U.S.C. §1981 is separate and distinct from her Title VII age, gender and national origin claims, and is properly pled.

This the 7th day of June, 2019.

GRAY NEWELL THOMAS, LLP

BY: /s/ Angela Gray
Angela Newell Gray
7 Corporate Center Court, Suite B
Greensboro, NC  27408
Telephone: (336) 285-8151
Facsimile: (336) 458-9359
Email: angela@graynewell.com
*Attorney for Plaintiff*
NC Bar # 21006

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:18-cv-1046

| | | |
|---|---|---|
| HUI MINN LEE, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| | ) | |
| vs. | ) | *Certificate of Service* |
| | ) | |
| | ) | |
| MARKET AMERICA, INC., | ) | |
| *Defendant*. | ) | |

I, Angela Newell Gray, Attorney for the Plaintiff, do hereby certify that I served the foregoing Plaintiff's Response in Opposition to the Defendant's Partial Motion to Dismiss the Plaintiff's Amended Complaint upon counsel for the Defendant shown below by electronically filing the same with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following attorney of record;

Theresa.Sprain@wbd-us.com
Patricia.Heyen@wbd-us.com

This the 7th day of June, 2019.

/s/ Angela Gray
Angela Newell Gray
Gray Newell Thomas, LLP
7 Corporate Center Court, Suite B
Greensboro, NC  27408
Tel:    (336) 285-8151
Fax:   (336) 458-9359
Email: angela@graynewell.com
NC State Bar #21006

<u>VERIFICATION OF COMPLIANCE WITH LOCAL RULE 7.3(d)(1)</u>

The undersigned hereby verifies that the foregoing brief does not exceed 6,250 words.

This the 7th day of June, 2019.

    <u>/s/ Angela Gray</u>
    Angela Newell Gray
    Gray Newell Thomas, LLP
    7 Corporate Center Court, Suite B
    Greensboro, NC  27408
    Tel:    (336) 285-8151
    Fax:    (336) 458-9359
    Email: angela@graynewell.com
    NC State Bar #21006

11

Case 1:18-cv-01046-WO-JLW   Document 16   Filed 06/07/19   Page 11 of 11