IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HUI MINN LEE,                        )
                                     )
              Plaintiff,             )
                                     )
       v.                            )          1:18CV1046
                                     )
MARKET AMERICA, INC.,                )
                                     )
              Defendant.             )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff Hui Minn Lee brings eight claims against
Defendant Market America, Inc. ("Market America"): retaliation
under 42 U.S.C. § 1981; race discrimination under § 1981, Title
VII, and N.C. Gen. Stat. § 143-422.2; and age and national
origin discrimination under Title VII and N.C. Gen. Stat. § 143-
422.2. (Doc. 4.) This matter is before the court on Defendant's
partial motion to dismiss. (Doc. 13.) For the reasons set forth
below, the court will grant Defendant's motion to dismiss
Plaintiff's Title VII retaliation and racial discrimination

claims pursuant to Rule 12(b)(6),[1] and grant in part and deny in part Defendant's motion to dismiss Plaintiff's state law claims pursuant to Rule 12(b)(6).

## I.     PROCEDURAL AND FACTUAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (citing King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The facts, taken in the light most favorable to Plaintiff, are as follows.

### A.     Factual Background

Plaintiff is Asian, of Taiwanese origin, and over the age of 40. (Amended Complaint ("Am. Compl.") (Doc. 4) ¶¶ 13, 51.) Defendant is a North Carolina corporation with an office in Greensboro, North Carolina. (Id. ¶ 5.)

---

[1] While Defendant originally filed its motion concerning Plaintiff's Title VII claims pursuant to Rule 12(b)(1), in light of the Supreme Court's ruling in Fort Bend Cty. v. Davis, 587 U.S. ____, 139 S. Ct. 1843, 1851–52 (2019), holding that failure to exhaust administrative remedies is not a jurisdictional requirement, Defendant properly filed a Suggestion of Subsequent Pertinent and Significant Authority, (Doc. 15), pursuant to Local Rule 7.3(i). Defendant now argues in its Reply brief that its motion to dismiss Plaintiff's race-related and retaliation claims under Title VII should be considered under Rule 12(b)(6). (Doc. 17 at 5 n.1.) The court will therefore treat Defendant's motion as one under Rule 12(b)(6).

### 1. <u>Plaintiff's Employment History with Defendant</u>

Plaintiff began working for Defendant as a Distributor Service Representative in Greensboro, North Carolina, in 2000. (<u>Id.</u> ¶ 12.) She speaks several languages, including English, Mandarin, and Taiwanese. (<u>Id.</u> ¶ 13.) Due to her language skills, Plaintiff was promoted in 2002 to the position of Trainer in the Training and Development Department. (<u>Id.</u> ¶ 14.) In this position, Plaintiff developed training materials for special projects in both English and Chinese. (<u>Id.</u>) She also trained Defendant's employees in Asia, the United Kingdom, and the United States. (<u>Id.</u>)

Between October 2002 and October 2017, "Plaintiff was consistently promoted within the Training and Development Department until she held the title of Global Training Project Manager," where she "remained the most accomplished and highest-ranking employee" in the department until her termination in October 2017. (<u>Id.</u> ¶ 15.) During this time, Plaintiff conducted numerous trainings in three languages for several departments and in several countries, including Taiwan, Malaysia, Singapore, and the Philippines. (<u>Id.</u> ¶¶ 16–19.)

### 2. <u>November 2013 – November 2016</u>

Around November 2013, Defendant hired Liliana Camara, an employee of Colombian origin, as a Spanish-speaking Training

Specialist. (Id. ¶ 20.) Plaintiff trained and supervised Camara. (Id.) Camara allegedly expressed discriminatory opinions "about her preference for Hispanic employees." (Id. ¶ 21.) Camara also allegedly "expressed her dislike for the Plaintiff," by "negatively referr[ing] to 'culture' issues between them," which Plaintiff contends "included racial and national origin issues because the Plaintiff is Taiwanese." (Id. ¶ 22.)

Plaintiff alleges that even though she was Camara's supervisor, she was "required to fulfill Camara's job responsibilities during Camara's extensive absences from work." (Id. ¶ 23.)

In 2016, Plaintiff alleges that her manager, Colbert Trotter, a white female, promoted Camara to supervise Plaintiff. (Id. ¶ 24.) "Plaintiff was unaware that there was an open supervisory position." (Id.) Plaintiff alleges that Defendant did not post the opening or otherwise inform the staff of the opening. (Id.) Plaintiff complained to Trotter that "she should have been informed of the open position and felt Camara had been handpicked for the supervisory position." (Id. ¶ 25.) Plaintiff also complained to Trotter that Camara had a "discriminatory animus toward her based on race and as a result Camara would negatively affect the Plaintiff's employment." (Id.) "Trotter agreed to retain supervisory authority over the Plaintiff and

—4—

re-titled, without promoting, Plaintiff to the position of Global Training Project Manager." (Id.)

Trotter left the department around November 2016. (Id. ¶ 26.) The Human Resources Director, Sherry Spesock, began supervising Plaintiff and Camara. (Id.)

### 3. December 2016

Around December 2016, while Plaintiff was taking personal time off, "Spesock awarded Camara a de facto promotion to 'head' of the Training Department." (Id. ¶ 27.) Plaintiff was again unaware of an opening for the position nor had Defendant posted the position or informed the staff of the opening. (Id.) Camara was now Plaintiff's boss. (Id. ¶ 28.) During a meeting in December 2016, "Camara stripped the Plaintiff's MPCP training responsibilities." (Id.) MPCP Training is "the most critical corporate-level training at Market America." (Id. ¶ 17.) Camara then allegedly gave those responsibilities to Henri Hue, an African-American male under the age of forty, who had been hired only one year prior and who was subordinate to Plaintiff. (Id. ¶¶ 28-29.)

Plaintiff expressed her concerns to Camara about "the need for consistency in the MPCP Training," and that "Hue had never been trained in how to properly conduct the MPCP Training." (Id. ¶ 30.) In response, Camara allegedly "accused Plaintiff of

lacking teamwork and being disobedient to former bosses," and
"again expressed her belief to the Plaintiff that their
cultural, meaning racial, differences were problematic for
Camara." (Id. ¶ 31.) Plaintiff then told Camara that prior to
Camara's hire, Plaintiff had never "received a job performance
evaluation below 'meets expectations' on teamwork-related
sections of performance evaluations and was indeed awarded
ratings of 'exceptional' or 'exceeds expectations' on a frequent
basis." (Id. ¶ 32.)

Camara then accused Plaintiff of "dumping" a training on
Camara, "despite the Plaintiff being ordered to cease conducting
[the training] by Trotter in order to cover some of the duties
previously held by Trotter's predecessor." (Id. ¶ 33.) "Camara
repeatedly described these and other problems with the Plaintiff
as 'cultural differences,'" and "[i]n each instance cited by
Camara, she inferred that the racial differences between she and
the Plaintiff were a root source of Camara's inability to work
with the Plaintiff." (Id. ¶ 34.)

Plaintiff then complained to Spesock, informing her that
"she believed Camara had created a hostile work environment for
the Plaintiff because of the Plaintiff's race and national
origin." (Id. ¶ 35.) Spesock allegedly responded "by informing
the Plaintiff that 'if [Spesock] could survive hostile

environment, [Plaintiff] should be able to." (Id. ¶ 36)
(alteration in original).

### 4. **April 2017 – October 2017**

Around April 2017, Plaintiff was given a "below-average
merit pay increase," which Plaintiff considers to be an adverse
employment action. (Id. ¶ 37.) She alleges that she was given
this "below average merit pay increase in retaliation for
complaining about race discrimination in the workplace because
there was no legitimate business reason for doing so." (Id.)

Camara was in charge of hiring new personnel for the
Training Department. (Id. ¶ 38.) Plaintiff contends that she
requested additional Mandarin-speaking trainers and employees
"due to the fact that the Defendant . . . earns the majority of
its revenue from Mandarin-speaking customers both domestically
and internationally," but no additional trainers or employees
were provided. (Id. ¶¶ 38–39.) Instead, Camara hired a Spanish-
speaking junior trainer, Delia Zepeda, under the age of 40, who
was not of Taiwanese origin and could not speak Mandarin. (Id.
¶ 39.) Camara allegedly began "consistently hiring individuals
under the age of forty." (Id. ¶ 40.)

Plaintiff alleges that Camara was aware of Plaintiff's
complaints to Spesock regarding Camara's allegedly
discriminatory acts. (Id. ¶ 41.) "As a result, and in addition

to Camara's discriminatory beliefs regarding the Plaintiff, Camara did not have a good working relationship with the Plaintiff and Camara made every effort to diminish the Plaintiff's role within the company." (Id.) Plaintiff further alleges that "the employees responsible for making decisions about her employment, including Camara and Spesock, were aware that she had engaged in protected activity by articulating her opposition to discriminatory treatment in the workplace due to her race." (Id. ¶ 42.) "Plaintiff further contends that those employees engaged in acts or actions intended to cause her to be terminated in retaliation for her engaging in said protected activity and because of her race." (Id.)

During August 2017, Plaintiff was conducting training for Defendant's Malaysian staff via teleconference, requiring her to work late night hours through the very early morning hours. (Id. ¶ 44.) "Nonetheless, Camara informed the Plaintiff that she was still expected to maintain her normal office hours of 9am-5pm." (Id.) "In fact, Camara demanded that the Plaintiff be available to work twenty-four (24) hours, seven (7) days a week." (Id.)

Due to the demanding work and "Camara's continued discriminatory attitude toward the Plaintiff," Plaintiff requested a leave of absence between the end of October through

early December 2017, using paid time off. (Id. ¶ 45.) Defendant approved this request. (Id.)

Plaintiff was terminated on October 5, 2017, while conducting training for employees in the United Kingdom. (Id. ¶ 46.) "Prior to her termination, the Plaintiff had not received any warnings or progressive discipline for poor job performance." (Id. ¶ 46.)

Her position remained open after her termination, and Hue took over her responsibilities. (Id. ¶ 48.) Plaintiff asked Spesock if there were any other positions to which Plaintiff could transfer, "even if it required her to return to a lesser position." (Id. ¶ 50.) "Despite job postings seeking applicants who possessed Plaintiff's bilingual ability and the Plaintiff's applying for those positions, the Plaintiff was never contacted." (Id.) Plaintiff alleges that "Spesock told the Translation Department Director, Jennifer Lin, to lie to the Plaintiff and state that all posted positions had been filled." (Id.)

### 5.  **General Allegations of Discrimination**

Plaintiff "contends that she was treated differently in terms of the conditions of her employment than similarly situated co-workers who worked under the supervision of Camara and who were under the age of forty (40) years and not of

–9–

Taiwanese origin, including Hue." (Id. ¶ 47.) She alleges this treatment was due to her age, and/or race, and/or national origin. (Id.)

She further alleges that Defendant "knew or should have known that Camara was subjecting the Plaintiff to discriminatory treatment in the workplace," and failed to stop it. (Id. ¶ 49.) She alleges that Defendant "by and through its managers and agents, had the apparent and actual authority to control Camara's behavior in the workplace," and failed to do so. (Id.) She then alleges that Defendant's failure to "eliminate the discriminatory treatment of the Plaintiff by Camara effectively condoned and ratified Camara's behavior." (Id.)

Plaintiff also alleges that she was not terminated for an objective reason and "due to no fault of her own." (Id. ¶ 53.)

### B.  **Procedural Background**

Plaintiff properly filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 27, 2018. (Mem. of Law in Supp. of Partial Mot. to Dismiss ("Def.'s Br.") (Doc. 14) at 4-5; Def.'s Mot. to Dismiss (Doc. 13) Ex. A, Charge of Discrimination (Doc. 13-1) at 2.) The EEOC issued Plaintiff her right-to-sue letter on September 28, 2018. (Am. Compl. (Doc. 4) ¶ 10.) Plaintiff filed her original complaint on December 26, 2018. (Doc. 1.) Plaintiff filed her

amended complaint on March 22, 2019. (Am. Compl. (Doc. 4).)

Defendant filed a partial motion to dismiss, (Doc. 13), and a

supporting memorandum, (Def.'s Br. (Doc. 14)). Plaintiff has

responded, (Pl.'s Mem. in Opp'n to Def.'s Partial Mot. to

Dismiss ("Pl.'s Resp.") (Doc. 16)), and Defendant has replied,

(Doc. 17).

Defendant moves to dismiss Plaintiff's Title VII claims for

race discrimination and retaliation for failure to exhaust

administrative remedies pursuant to Federal Rule of Civil

Procedure 12(b)(6), and all of Plaintiff's state law claims

pursuant to Rule 12(b)(6). (Doc. 13.)

Defendant does not move to dismiss Plaintiff's Section 1981

claims nor Plaintiff's Title VII claims for age and national

origin discrimination. (Id.)

## II.   **STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its

face if "the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is

liable" and demonstrates "more than a sheer possibility that a

defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## III. **ANALYSIS**

### A. **Plaintiff's Title VII Claims for Racial Discrimination and Retaliation**

The Supreme Court recently held that "Title VII's charge-filing instruction is not jurisdictional," but is "properly ranked among the array of claim-processing rules that must be timely raised to come into play." Fort Bend Cty., 587 U.S. at ___, 139 S. Ct. at 1846. Title VII's requirement that Plaintiff file a charge with the EEOC prior to filing a complaint in federal court nevertheless applies. See id. at ___, 139 S. Ct. at 1851 ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one . . . .").

A plaintiff "alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005). Plaintiff must "describe generally the action or practices complained of." Id. (quoting 29 C.F.R. § 1601.12(b)). While courts construe administrative charges liberally, a plaintiff's Title VII claims in court may not "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof"; if the claims do exceed the scope of the EEOC charge, "they are procedurally barred." Id. at 509 (quoting Dennis v. Cty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)). Further, "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." Id. Indeed, the Fourth Circuit recently affirmed the "generally accepted principle" that the "scope of a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case' before the agency." Stewart v. Iancu, 912 F.3d 693, 705 (4th Cir. 2019) (quoting Hill v. W. Elec. Co., 672 F.2d 381, 390 n.6 (4th Cir. 1982)).

The court will address Plaintiff's racial discrimination and retaliation claims in turn.

### 1.   __Racial Discrimination__

Defendant argues that Plaintiff fails to state a claim for racial discrimination under Title VII because it exceeds the scope of Plaintiff's EEOC charge. (Def.'s Br. (Doc. 14) at 11.) Defendant alleges that "[t]he sole mention of race in Plaintiff's Charge is the identification of other actors' races in parentheses — Plaintiff's own race is not even mentioned," and further, "Plaintiff's Charge makes no assertion that any actions were taken by Defendant or its employees due to Plaintiff's race, nor did she check the 'race' box on the form." (Id.)

Plaintiff, in her response, "concedes that exhaustion of administrative remedies is a prerequisite to filing a lawsuit alleging discrimination and retaliation in violation of Title VII." (Pl.'s Resp. (Doc. 16) at 8.) Plaintiff then points to her Section 1981 claims, noting that "a party proceeding under § 1981 is not restricted by the administrative and procedural requirements of Title VII." (Id.) Plaintiff finally states, "Plaintiff's race discrimination claim under 42 U.S.C. § 1981 is separate and distinct from her Title VII age, gender and

national origin claims, and is properly pled."[2] (Id. at 9.) The
court reads this to mean that she is not pursuing any
race-related claims or a retaliation claim under Title VII.[3]
The court will therefore grant Defendant's motion to dismiss
Plaintiff's Title VII claim for racial discrimination for
failure to state a claim.

### 2. Retaliation

Defendant also argues that Plaintiff fails to state a claim
for retaliation under Title VII because it exceeds the scope of
Plaintiff's EEOC charge. (Def.'s Br. (Doc. 14) at 13.) While
Plaintiff does not include retaliation in the Counts concerning
Title VII, (see Am. Compl. (Doc. 4) at 12–13), Defendant points
to Plaintiff's allegation that:

> she was subjected to an adverse employment action(s)
> in retaliation for opposing employment discrimination
> in the workplace, including but not limited to,
> failing to be promoted to a supervisory position in
> August and December 2016, receiving decreased merit

---

[2] The court also notes that, while Plaintiff checked the box
for sex discrimination, (Charge of Discrimination (Doc. 13-1) at
2), Plaintiff has not pled sex discrimination in her complaint.
See Fed. R. Civ. P. 4, 8, 15.

[3] The court observes that much of the confusion in this
matter stems from Plaintiff grouping several claims brought
under several statutes into a single Count, based on the type of
discrimination (age, race, national origin). While there is no
Federal Rule of Civil Procedure or Local Rule precisely on
point, this confusion could be avoided by separating out each
distinct legal claim into its own separate Count. Cf. Fed. R.
Civ. P. 8(d), 10(b).

-15-

pay, termination and failure to be considered for, or
        offered, continued employment in a different position
        after her termination.

(Id. ¶ 57; Def.'s Br. (Doc. 14) at 13.) While this allegation is

not contained in the Counts detailing Plaintiff's legal claims,

the court will nevertheless treat this allegation as a claim for

retaliation under Title VII.

        Plaintiff's claim for retaliation under Title VII fails as

it is outside the scope of Plaintiff's EEOC Charge. As detailed

above, Plaintiff must "describe generally the action or

practices complained of," Chacko, 429 F.3d at 508 (quoting 29

C.F.R. § 1601.12(b) (2004)), and "if the factual allegations in

the administrative charge are reasonably related to the factual

allegations in the formal litigation, the connection between the

charge and the claim is sufficient." Id. at 509.

        The Fourth Circuit's opinion in Miles v. Dell, Inc., 429

F.3d 480, 490-92 (4th Cir. 2005), is dispositive here. There,

the plaintiff did not check the "retaliation" box, nor did her

narrative mention retaliation. The plaintiff's narrative

resembles Plaintiff's here: "I believe that I was discriminated

against due to my sex (female) and (pregnancy)." Id. at 492.

Indeed, the plaintiff's narrative in Miles also stated that she

complained to a supervisor, but the Fourth Circuit found that it

did not "state that she complained to [her supervisor] about

discrimination," nor did it "otherwise allege facts that would have put [her employer] or the EEOC on notice that she was charging [her employer] with retaliation." Id. The Fourth Circuit concluded that her retaliation claim was not reasonably related to her charge for sex and pregnancy discrimination claims and therefore had not exhausted her administrative remedies. Id.

Here, Plaintiff only alleged the following facts in her EEOC Charge: that Human Resources terminated her; that her manager told her she was not a team player and that she was a bad worker; that she was in fact a good employee; and she was the oldest employee being replaced by a younger woman. (Charge of Discrimination (Doc. 13-1) at 2.) Plaintiff's narrative does not contain one fact that even hints at retaliation, especially compared to the plaintiff in Miles, whose allegation that she complained to her manager still did not rise to the level of "reasonably related" to a retaliation claim.[4]

---

[4] The Fourth Circuit has "held that a plaintiff may raise for the first time in federal court the claim that her employer retaliated against her for filing with the EEOC in violation of Title VII." Hentosh v. Old Dominion Univ., 767 F.3d 413, 416 (4th Cir. 2014) (citing Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992)). This rule does not apply here, because Plaintiff does not allege she was retaliated against for filing with the EEOC; Plaintiff was terminated in October 2017 and did not file her EEOC Charge until March 2018. (Am. Compl. (Doc. 4) ¶ 46; Charge of Discrimination (Doc. 13-1) at 2.)

The court therefore finds that Plaintiff did not allege facts in her EEOC Charge that would have put Defendant or the EEOC on notice that she was charging retaliation, and thus her retaliation claim is not "reasonably related" to her claims for age and national origin.

The court will grant Defendant's motion to dismiss Plaintiff's claim for retaliation under Title VII.

**B.    Plaintiff's North Carolina Public Policy Claims**

The court will grant in part and deny in part Defendant's motion to dismiss Plaintiff's claims for race, age, and national origin discrimination, disparate treatment, wrongful termination, and retaliation under North Carolina's Equal Employment Practices Act ("NCEEPA").

"North Carolina is an employment-at-will state. . . . [The North Carolina Supreme Court] has recognized a public-policy exception to the employment-at-will rule." Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331-32, 493 S.E.2d 420, 422 (1997); see also Coman v. Thomas Mfg. Co., 325 N.C. 172, 175-76, 381 S.E.2d 445, 447 (1989).

The NCEEPA provides that:

It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap

-18-

by employers which regularly employ 15 or more
employees.

N.C. Gen. Stat. § 143-422.2(a).

"Neither the North Carolina Supreme Court nor the North
Carolina Court of Appeals has recognized a private cause of
action under the NCEEPA. Instead, most courts have applied the
NCEEPA only to common law wrongful discharge claims or in
connection with other specific statutory remedies." Smith v.
First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000); see
also McLean v. Patten Cmtys., Inc., 332 F.3d 714, 720 (4th Cir.
2003); Alexander v. City of Greensboro, 762 F. Supp. 2d 764,
810–11 (M.D.N.C. 2011). A plaintiff therefore may succeed on a
public policy claim under the NCEEPA when she "allege[s] facts
sufficient to support a claim that [her] firing was 'motivated
by an unlawful reason or purpose that is against public
policy,'" such as racial discrimination. Bigelow v. Town of
Chapel Hill, 227 N.C. App. 1, 11, 14, 745 S.E.2d 316, 324, 326
(2013).

The NCEEPA does not, however, create a private right of
action for retaliation, McLean, 332 F.3d at 719, nor disparate
treatment, Jones v. Duke Energy Corp., 43 F. App'x 599, 600 (4th
Cir. 2002) (per curiam).

Defendant argues that Plaintiff's claims under N.C. Gen.
Stat. § 143-422.2 must be dismissed pursuant to Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim. (Def.'s
Br. (Doc. 14) at 6-7.) Defendant argues that the NCEEPA does not
create a private right of action and because Plaintiff does not
allege a common law wrongful discharge claim or other statutory
remedy, her claims under this statute must be dismissed. (Id.)
Plaintiff concedes, stating that, based on McLean, she "does not
attempt to assert in those counts a separate cause of action
based solely on 'discrimination, harassment, retaliation or
disparate treatment' irrespective of wrongful discharge/
termination." (Pl.'s Resp. (Doc. 16) at 7-8.)

The court will grant Defendant's motion to dismiss
Plaintiff's North Carolina public policy claims for disparate
treatment based on race, age, and national origin, and
harassment based on race. Because NCEEPA does not create a
private cause of action for these claims, see Jones, 43 F. App'x
at 600, and Plaintiff does not point to an independent statutory
remedy for the claims, and indeed concedes that she is not
making claims solely on those grounds, (see Pl.'s Resp. (Doc.
16) at 8), those claims fail.

Regarding Plaintiff's wrongful termination claims on the
basis of age, race, and national origin, the court will deny
Defendant's motion to dismiss.

First, Plaintiff's facts are sufficient to support a plausible allegation of wrongful termination. She alleges that she was "terminated on or about 5 October 2017 while conducting training for the United Kingdom employees." (Am. Compl. (Doc. 4) ¶ 46.) Plaintiff alleges that prior to her termination, she "had not received any warnings or progressive discipline for poor job performance," and that she had "never received a job performance evaluation below 'meets expectations' . . . and was indeed awarded ratings of 'exceptional' or 'exceeds expectations' on a frequent basis." (Id. ¶¶ 32, 46.)

She also alleges that her boss, Camara, "expressed a preference for Hispanic employees," "expressed her belief to the Plaintiff that their cultural . . . differences were problematic," and "negatively referred to 'cultural' issues between" Camara and Plaintiff. (Id. ¶¶ 22, 31.) Plaintiff submits that when she complained to Human Resources Director Spesock that Camara had created a hostile environment for Plaintiff based on Plaintiff's national origin and race, "Spesock responded by informing the Plaintiff that 'if [Spesock] could survive hostile environment, [Plaintiff] should be able to.'" (Id. ¶¶ 35–36.)

Plaintiff further alleges Camara refused to grant Plaintiff's requests for additional Mandarin-speaking trainers,

instead "consistently hiring individuals under the age of forty," for example, hiring a Spanish-speaking employee under the age of forty and not of Taiwanese origin. (Id. ¶¶ 38–40.) Camara also allegedly "demanded" Plaintiff be available to work twenty-four hours a day. (Id. ¶ 44.) Camara allegedly stripped Plaintiff of her most important training duties, gave those duties to a "male of African origin" under the age of forty, and "continued to displace the Plaintiff and diminish her role and responsibilities within the Training Department," until Plaintiff was terminated. (Id. ¶¶ 28, 43–47.)

The court finds that Plaintiff submits sufficient facts, taken in the light most favorable to her, to plausibly allege she was wrongfully fired on account of her race, national origin, and age.

Second, Plaintiff alleges "wrongful termination" in each of the three Counts, all of which include N.C. Gen. Stat. § 143-422.2 as a legal claim. (Id. at 12–13.) This statute codifies North Carolina public policy. N.C. Gen. Stat. § 143-422.2. The court will not require the magic words of "wrongful discharge under North Carolina common law" in order to successfully state a claim for wrongful discharge under North Carolina public policy; it is surely enough that she cite to the statute itself. The court finds that Plaintiff has plausibly alleged three

claims for common law wrongful discharge in violation of North Carolina public policy, based on race, national origin, and age, and the court will therefore deny Defendant's motion to dismiss these claims. See, e.g., Raynor v. G4S Secure Sols. (USA) Inc., 283 F. Supp. 3d 458, 466 (W.D.N.C. 2017); Bigelow, 227 N.C. App. at 14, 745 S.E.2d at 326.

The court will grant Defendant's motion to dismiss Plaintiff's state law claims for discrimination, harassment, and disparate treatment based on race, and discrimination and disparate treatment based on age and national origin but deny Defendant's motion as to Plaintiff's wrongful discharge claims under North Carolina public policy.

IV.   **CONCLUSION**

For the reasons set forth herein,

**IT IS THEREFORE ORDERED** that Defendant's partial motion to dismiss, (Doc. 13), is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** with respect to Plaintiff's Title VII claims for racial discrimination and retaliation, and Plaintiff's North Carolina public policy claims for disparate treatment based on race, age, and national origin, and harassment based on race, and **DENIED** with respect to Plaintiff's claims for wrongful discharge in violation of North Carolina public policy based on race, age, and national origin.

This the 17th day of March, 2020.

_____
                United States District Judge