IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:18-cv-1046

| | |
|---|---|
| HUI MINN LEE, ) | |
|    *Plaintiff*, ) | |
| ) | |
| ) | *Plaintiff's Memorandum in Opposition to* |
| vs. ) | *Defendant's Motion for Summary Judgment* |
| ) | *as to the Plaintiff's Claim for Retaliation* |
| ) | |
| MARKET AMERICA, INC., ) | |
|    *Defendant*. ) | |

## STATEMENT OF RELEVANT FACTS

Market America maintains a comprehensive policy prohibiting retaliation against any employee who complains of harassment or discrimination in the workplace. Human Resources has responsibility for the enforcement of the policy including maintaining reporting and monitoring. The policy makes it a violation for an employee to, among other things, engage in verbally harassing behavior that adversely affects an employees' employment opportunities. (Exhibit J, ¶E1). Market America's broad anti-retaliation policy prohibits retaliatory conduct whether engaged in by fellow employees or a manager. The policy also incorporates a complaint procedure for employees which urges the reporting of all incidents of discrimination, harassment or retaliation to their manager, the Director of Human Resources or any attorney in the Legal Department. (Exhibit J, ¶2(e)(1)). After receiving a complaint, Market America is obligated to promptly, thoroughly and impartially investigate such complaint. (Exhibit J, ¶2(e)(2)).

In August, 2016, Lilianna Camara was promoted to Head of the Training Department, and the plaintiff was informed that Camara was "going to be [her] boss." Upon learning of Camara's promotion, Lee complained to her then supervisor, Colbert Trotter, that Camara had a

1

discriminatory animus toward her based on race and as a result, Camara would negatively affect Lee's employment. (Exhibit A, Lee Declaration @ ¶¶15-16; Exhibit K, Lee Second Declaration @ ¶4). In response to Lee's complaints and in an effort to decrease Camara's authority over Lee, Trotter agreed to retain supervisory authority over Lee. (Exhibit A, Lee Declaration @ ¶16; Exhibit C, Camara depo. @ p. 31, line 25- p. 32, line 10).

Camara expressed a preference for Hispanic employees to the plaintiff, and also expressed her dislike for Lee. For example, and among other things, Camara negatively referred to "culture" issues between them. The culture differences referenced by Camara included racial and national origin issues because Lee is Taiwanese. (Exhibit A, Lee Declaration @ ¶13). Camara does not flat-out deny that she made comments regarding cultural differences between she and Lee, rather she testified that she could not recall such comments. (Exhibit C, Camara depo. @ p. 97, lines 7-20). As Camara's attitude continued to negatively impact Lee, in mid-December, 2016, Lee complained about Camara's conduct to Sherry Spesock, the Director of Human Resources for Market America. (Exhibit D, Spesock depo. @ p. 7, lines 14-24; Exhibit A, Lee Declaration @ ¶26; Exhibit K, Lee Second Declaration @ ¶6). Lee informed Spesock that she believed Camara had created a hostile work environment for her because of her race and national origin. (Exhibit A, Lee Declaration @ ¶26; Lee Second Declaration @ ¶6). Spesock confirmed that Lee reported to her that Camara had made statements that Camara felt there were cultural differences between she and Lee that impacted their ability to work together. Spesock also admitted that Lee's report prompted her to have a conversation with Camara wherein she warned Camara to manage everybody the same. (Exhibit D, Spesock depo. @ p. 40, line 23- p. 42, line 16). However, contrary to the defendant's anti-retaliation policy, Spesock did not conduct a thorough and impartial investigation into the plaintiff's complaint. Other than Spesock

informing Camara that Lee had complained about her discriminatory conduct, nothing else was done.

Camara's retaliatory conduct toward the plaintiff intensified after Lee's complaints to Spesock. In retaliation, Lee received a below average merit increase in April, 2017 even though her job performance evaluation met and/or exceeded expectation. Camara increasingly began to make Lee's work environment difficult. For example, instead of hiring a mandarin speaking staff member to assist the plaintiff with training as she had requested, in May 2017, Camara hired Delia Zepeda, a Hispanic trainer who could not speak Mandarin. (Exhibit A, Lee Declaration @ ¶29). Spesock and Camara ultimately decided to eliminate Lee's job title and position after they found a Chinese-speaking training specialist at the beginning of 2017. (Exhibit D, Spesock depo. @ p. 20, line 23- p. 26, line 12; Exhibit K, Lee Second Declaration @ ¶¶9, 10, 12).

During August and September, 2017, Lee was required to conduct training for Market America's Malaysian staff via teleconference. Due to the significant time difference, Lee worked late night hours through the very early morning hours. Nonetheless, Camara informed Lee that she was still expected to maintain normal office hours of 9am-5pm in the Greensboro, NC office. In fact, Camara demanded that Lee be available to work twenty-four (24) hours, seven (7) days per week. (Exhibit A, Lee Declaration @ ¶32).

As a result of the foregoing work demands and Camara's continued discriminatory attitude toward Lee, Lee requested a leave of absence from work between the end of October through early December, 2017. The leave request was approved and Lee was scheduled to begin leave in approximately mid-October, 2017. (Exhibit A, Lee Declaration @ ¶33). However, on October 5, 2017, Lee was called into Spesock's office where, along with Camara, she was terminated. (Exhibit C, Camara depo. @ p. 75, line 17- p. 76, line 24).

3

**ARGUMENT**

I. **PLAINTIFF'S CLAIM FOR RETALIATION IN VIOLATION OF TITLE VII AND 42 U.S.C. §1981 SHOULD NOT BE DISMISSED**

Title VII proscribes discrimination against an employee because, in relevant part, she "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). A plaintiff may prove a Title VII retaliation claim either through direct evidence of retaliatory animus or via the application of the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events. *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir.2004) (recognizing that elements of prima facie § 1981 and Title VII retaliation claims are identical). *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271–72 (4th Cir. 2015).

As to the first element, employees engage in protected oppositional activity when, *inter alia*, they "complain to their superiors about suspected violations of Title VII." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543–44 (4th Cir.2003). Here, it is undisputed that the plaintiff followed Market America's policy by complaining to both Colbert Trotter and Sherry Spesock about Camara's discriminatory conduct on more than one occasion. (Spesock depo. @ p. 40, line 23- p. 42, line 16). While Spesock's memory failed her during her deposition about when these conversations took place, the plaintiff's memory has held up. According to Lee, she complained to Spesock about Camara after initially complaining to Camara and Trotter about "being treated differently" than her co-workers in September and December, 2016. (Lee Second Declaration @ ¶4, 6). Thereafter in December, 2016, Camara negatively referred to "culture"

4

issues and "cultural differences" between she and the plaintiff which, in her deposition, Camara could not deny making. (Camara depo. @ p. 97, lines 7-18). Hence, the first element of a retaliation claim is established on the present facts.

With regard to the second element of a retaliation claim, the facts are undisputed that Camara took adverse actions against the plaintiff which culminated in her termination in October, 2017. "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.' " *123 *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 601 (D. Md. 2018) (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)). "Discharge" from employment is one form of adverse employment action. See *id*. at 601 (citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)).

In addition to the defendant's ultimate adverse act of termination in the present case, Camara likewise engaged in retaliatory acts *prior to* the termination including, failing to support Lee in her work role with proper staffing, requiring Lee to relinquish many of her primary job responsibilities and making unreasonable demands of Lee regarding her work schedule. Camara accused Lee of "dumping UFO Services Training on [Camara]" despite the fact that Lee had been told to cease conducting UFO Services Training by Trotter in order to cover some of the duties previously held by Trotter's predecessor, Amanda Clarida. In response, Camara repeatedly described these and other problems to Lee as "cultural differences." In each instance cited by Camara, she inferred that the racial differences between she and Lee were a root source of Camara's inability to work with her. (Exhibit A, Lee Declaration @ ¶¶24-25).

With regard to the third element of a claim for retaliation, a causal link between elements one and two exists. A plaintiff may establish the existence of facts that "suggest[ ] that the adverse action occurred because of the protected activity." *Lettieri v. Equant Inc.*, 478 F.3d 640,

5

650 (4th Cir. 2007) (recognizing that "relevant evidence may be used to establish causation"). A plaintiff may also establish that "the adverse act bears sufficient temporal proximity to the protected activity." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action. See *id*. In considering temporal proximity, the court may look to initial complaints of harassment, *as well as subsequent complaints of retaliation*. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir.1994) (finding temporal proximity where an employee was demoted six weeks after a hearing on his EEO complaint). "As this Court has held, establishing a 'causal relationship' at the prima facie stage is not an onerous burden." *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012) ("[V]ery little evidence of a causal connection is required to establish a prima facie case of retaliation.") (citation omitted)).

The Fourth Circuit has consistently required proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim. To establish a causal relationship between the protected activity and the termination, a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021). In the present case, Camara testified that she and Spesock were the individuals involved in the decision to terminate the plaintiff; and it is undisputed Spesock was not only aware of Lee's complaints of discriminatory conduct, but also, she communicated those complaints to Camara. (Camara depo. @ p. 75, line 17- p. 76, line 1, P. 76, line 22- p. 77, line 22). Thereafter, Camara began subjecting the plaintiff to retaliatory acts beginning within weeks of her initial complaints of discrimination against Camara and leading up to her ultimate termination.

## CONCLUSION

Based on the foregoing, the plaintiff's claim for retaliation should not be dismissed summarily.

This the 2nd day of February, 2022.

GRAY NEWELL THOMAS, LLP

BY: /s/ Angela Gray
     Angela Newell Gray
     7 Corporate Center Court, Suite B
     Greensboro, NC  27408
     Telephone:   (336) 285-8151
     Facsimile:   (336) 458-9359
     Email:   angela@graynewell.com
     *Attorney for Plaintiff*
     NC Bar # 21006

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:18-cv-1046

| | |
|---|---|
| HUI MINN LEE, )<br>    *Plaintiff*, )<br>)<br>)<br>vs. )<br>)<br>)<br>MARKET AMERICA, INC., )<br>    *Defendant*. ) | *Certificate of Service* |

    I, Angela Newell Gray, Attorney for the Plaintiff, do hereby certify that I served the foregoing Plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary Judgment on Plaintiff's Retaliation Claim upon counsel for the Defendant shown below by electronically filing the same with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following attorney of record;

Camilla DeBoard; cfd@trslaw.com

This the 2nd day of February, 2022.

    /s/ Angela Gray
    Angela Newell Gray
    Gray Newell Thomas, LLP
    7 Corporate Center Court, Suite B
    Greensboro, NC  27408
    Tel:    (336) 285-8151
    Fax:    (336) 458-9359
    Email: angela@graynewell.com
    NC State Bar #21006

8

Case 1:18-cv-01046-WO-JLW   Document 45   Filed 02/02/22   Page 8 of 9

VERIFICATION OF COMPLIANCE WITH LOCAL RULE 7.3(d)(1)

The undersigned hereby verifies that the foregoing brief does not exceed 2,000 words.

This the 2nd day of February, 2022.

>/s/ Angela Gray
> Angela Newell Gray
> Gray Newell Thomas, LLP
> 7 Corporate Center Court, Suite B
> Greensboro, NC  27408
> Tel:    (336) 285-8151
> Fax:    (336) 458-9359
> Email: angela@graynewell.com
> NC State Bar #21006

9

Case 1:18-cv-01046-WO-JLW   Document 45   Filed 02/02/22   Page 9 of 9