IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HUI MINN LEE,                    )
                                 )
        Plaintiff,               )
                                 )
    v.                           )        1:18CV1046
                                 )
MARKET AMERICA, INC.,            )
                                 )
        Defendant.               )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

This matter comes before the court on Defendant Market
America, Inc.'s ("Defendant") Motion for Summary Judgment,
(Doc. 33). For the reasons that follow, this court will grant
Defendant's Motion for Summary Judgment.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

**A.  Factual Background**

Plaintiff Hui Minn Lee ("Plaintiff")[1] worked as a corporate
trainer at Market America from September 2000 through October 5,
2017. (Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s
Br.") (Doc. 34) at 1, 4.)[2] She is Taiwanese. (Lee Decl. (Doc. 36-

---

[1] Plaintiff also goes by "Nadine." (Ex. A, Hui Minn Lee
Decl. ("Lee Decl.") Doc. 36-1 ¶ 1.)

[2] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

1) ¶ 5.) Market America is a product brokerage and internet one-to-one marketing company. (Def.'s Br. (Doc. 34) at 3.) Market America does business worldwide, and its headquarters are in Greensboro, North Carolina. (Id.) Plaintiff was a member of Market America's training department. (Id.)

Plaintiff started at Market America as a franchise services representative and then moved into the training department in 2002. (Ex. 2, Nadine Lee Dep. ("Lee Dep.") (Doc. 34-2) at 5-7.) In 2015, her title changed to a senior trainer. (Id. at 8.) Her title was changed again to global training project manager. (Id.) Plaintiff was not in a management position, and she did not have any direct reports. (Ex. D, Sherry Spesock Dep. Tr. ("Spesock Dep.") (Doc. 36-4) at 32.) Plaintiff was the only Mandarin speaker in her department. (Ex. C, Liliana Camara Dep. Tr. ("Camara Dep.") (Doc. 36-3) at 58.) Plaintiff's primary job responsibility was to conduct trainings for the Asian Market customer service representatives in Mandarin. (Id. at 70.)

Plaintiff had a history of problems with her supervisors. For example, Plaintiff recorded her conversations with her first supervisor in the training department because her supervisor was not making changes in response to Plaintiff's complaints. (Lee Dep. (Doc. 34-2) at 10.)

Liliana Camara joined the Market America training department in November 2013. (Camara Dep. (Doc. 36-3) at 30.) On

-2-

August 15, 2016, Camara was promoted to global training manager. (Id. at 33.) Plaintiff, upon learning that Camara was now the manager of the training department, asked why she was demoted and complained to Colbert Trotter, the person who had promoted Camara. (Lee Dep. (Doc. 34-2) at 14.) However, Plaintiff's title remained the same after Camara became manager, and Plaintiff's pay remained the same. (Id. at 20.) Trotter allowed Plaintiff to report to her until Trotter left Market America on November 11, 2016. (Id. at 14-15; Camara Dep. (Doc. 36-3) at 33.)

Plaintiff was resistant to the changes implemented by Camara and refused to follow Camara's assignments. For example, Camara wanted more collaboration within the training department and asked all trainers to upload their training materials to an online database. (Camara Dep. (Doc. 36-3) at 48, 55.) Plaintiff refused to upload the training materials. (Id.) According to Camara, Plaintiff gave her "a lot of resistance[.]" (Id. at 21.)

Camara had several conversations with Plaintiff about her job performance, specifically that Plaintiff needed to be more of a team player. (Lee Dep. (Doc. 34-2) at 22.) Nevertheless, Plaintiff refused to do the trainings Camara asked her to do, viewing those tasks as "beneath" her. (Id. at 25.) As the only Mandarin speaker in the training department, Plaintiff's refusal to lead certain trainings impacted the quality of training employees who primarily spoke Mandarin received because they

-3-

were forced to attend a training in their non-native language. (Camara Dep. (Doc. 36-3) at 20-21.) Plaintiff's refusal to lead trainings also impacted the training department because other employees had to cover for her. (Id. at 43.) Camara was not the only Market America employee to express concerns about Plaintiff's job performance. Sherry Spesock, head of human resources at Market America, observed Plaintiff in June 2016 and noted that Plaintiff was "quick to leave" and "not willing to do any additional work." (Spesock Dep. (Doc. 36-4) at 8, 19.)

On one occasion, Camara informed Plaintiff that despite Plaintiff's refusal to conduct a training, Plaintiff was going to have to lead the training because Plaintiff was the only Mandarin speaker on the team, and the trainees needed to be trained in Mandarin. (Camara Dep. (Doc. 36-3) at 59.) According to Camara, Plaintiff "reluctantly agreed and planned to end the class two weeks earlier." (Id.) Moreover, Camara received complaints "that the material was rushed and incomplete." (Id.)

Despite Camara's conversations with Plaintiff about Plaintiff's job performance issues, (id. at 36-37), Plaintiff's job performance did not improve. Although Plaintiff never received a formal written reprimand, (id. at 37), Plaintiff's job performance was a "known issue" amongst Camara and Spesock, (id. at 38).

-4-

Plaintiff never reported any issues of discrimination during her employment. (Ex. 5, Def.'s Answers to Interrogs. (Doc. 34-5) ¶ 3.) When Camara became Plaintiff's manager, Plaintiff told Spesock that Camara had made a comment to Plaintiff about Camara and Plaintiff's "cultural differences . . . that impacted their ability to work together[.]" (Spesock Dep. (Doc. 36-4) at 41-42.) Spesock told Camara that she would be required to report to Camara, and Spesock also had a conversation with Camara about being professional and "manag[ing] everybody the same[.]" (Id. at 42-43.)

Camara and Spesock had several conversations about Plaintiff before terminating her. (Camara Dep. (Doc. 36-3) at 76-78.) Regarding their conversations, Camara stated:

> We had several -- Sherry and I had several conversations about the concerns we had with [Plaintiff's] attitude. And given that it had been so consistent, and given that she had refused or challenged the authority of her last three managers, myself included, we concluded that it was in the -- the best interest for the company was to not have [Plaintiff] in the team.

(Id. at 78.) Camara and Spesock met with Plaintiff in Spesock's office and told Plaintiff they were terminating her because she "was not being a team player[.]" (Id. at 79.)

Market America hired Rose Chaffin to replace Plaintiff. (Id. at 82.) Chaffin was not given the same title as Plaintiff, but she took on seventy to eighty percent of Plaintiff's

-5-

responsibilities. (Id. at 84, 87.) Spesock also had the understanding that although no one was hired after Plaintiff's termination with the exact title Plaintiff had, Chaffin was hired to take Plaintiff's position and job responsibilities. (Spesock Dep. (Doc. 36-4) at 27–28.)

**B. Procedural Background**

Plaintiff submitted a charge of discrimination to the Equal Employment Opportunity Commission ("EEOC") on March 27, 2018, alleging discrimination on the basis of age, national origin, and sex. (Ex. 1, Position Statement (Doc. 34-1) at 2.) Plaintiff filed a complaint, (Doc. 1), with this court on December 26, 2018, and later filed an amended complaint, (Am. Compl. (Doc. 4)), on March 22, 2019. The amended complaint alleged the following claims against Defendant: retaliation under 42 U.S.C. § 1981; race discrimination under § 1981, Title VII, and N.C. Gen. Stat. § 143-422.2; and age and national origin discrimination under Title VII and N.C. Gen. Stat. § 143-422.2. (Id. at 12–13.)

Defendant filed a partial motion to dismiss Plaintiff's Title VII claims for race discrimination and retaliation and Plaintiff's state law claims. (Doc. 13.) Defendant did not move to dismiss Plaintiff's § 1981 claims nor Plaintiff's Title VII claims for age and national origin discrimination. (Id.) This court granted Defendant's motion to dismiss with respect to

-6-

Plaintiff's Title VII claims for racial discrimination and
retaliation, and Plaintiff's North Carolina public policy claims
for disparate treatment based on race, age, and national origin,
and harassment based on race, and denied with respect to
Plaintiff's claims for wrongful discharge in violation of North
Carolina public policy based on race, age, and national origin.
(Doc. 18 at 23.)

Defendant then filed a Motion for Summary Judgment,
(Doc. 33), along with a brief in support, (Def.'s Br.
(Doc. 34)). Plaintiff responded, (Pl.'s Mem. in Opp'n to Def.'s
Mot. for Summ. J. ("Pl.'s Resp.") (Doc. 36)), and Defendant
replied, (Def.'s Reply to Mot. for Summ. J. ("Def.'s Reply")
(Doc. 40)). Defendant also filed a Motion to Amend, (Doc. 37),
along with a brief in support, (Mem. of Law in Supp. of Def.'s
Mot. to Amend ("Def.'s Mot. to Amend Br.") (Doc. 38)), to which
Plaintiff responded, (Pl.'s Mem. in Opp'n to Def.'s Mot. to
Amend Mot. for Summ. J. ("Pl.'s Mot. to Amend Resp.")
(Doc. 41)).

On January 4, 2022, this court entered an Order addressing
Defendant's argument raised in its reply brief that this court
should strike the declaration of Quilin Cheng. (Doc. 42 at 2.)
Plaintiff filed a response. (Doc. 43.)

On January 20, 2022, this court granted in part Defendant's
Motion to Amend. (Doc. 44.) This court allowed Plaintiff to file

-7-

a response to Defendant's amended summary judgment motion. (<u>Id.</u> at 6-7.) Plaintiff filed a response to Defendant's amended summary judgment motion to address the retaliation claim. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. as to Pl.'s Claim for Retaliation ("Pl.'s Retaliation Br.") (Doc. 45).)

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325. If the "moving party discharges its burden . . . , the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." <u>McLean v. Patten Cmtys., Inc.</u>, 332 F.3d 714, 718-19 (4th Cir. 2003) (citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)). Summary judgment should be "granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." <u>Id.</u> at 719 (citing <u>Liberty Lobby</u>, 477 U.S. at 247-48). "Mere allegations" in

-8-

support of a party's pleadings without "any significant probative evidence" to support those allegations do not provide sufficient evidence to allow a reasonable jury to resolve a dispute in favor of that party. Liberty Lobby, 477 U.S. at 248–49 (internal quotations omitted) (quoting First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)); see also Brown v. Sears Auto. Ctr., 222 F. Supp. 2d 757, 761 (M.D.N.C. 2002) ("[T]he non-moving party cannot rely solely on unsupported assertions to demonstrate that a genuine issue of material fact exists.").

Put another way, simply showing some "metaphysical doubt as to the material facts" is not sufficient to establish a genuine dispute. Matsushita, 475 U.S. at 586. In considering whether a genuine issue of material fact exists, the court must be careful not to weigh the evidence or make credibility determinations. Liberty Lobby, 477 U.S. at 250. Instead, the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of that party. Id. at 255.

## III. **MOTION FOR SUMMARY JUDGMENT**

### A. **Discrimination Claims**

Plaintiff asserts national origin discrimination under Title VII and the public policy of North Carolina, citing N.C. Gen. Stat. § 143-422.2, and race discrimination under § 1981.

-9-

(Am. Compl. (Doc. 4) at 12.) [3] North Carolina courts, looking to
federal decisions for guidance in establishing evidentiary
standards and principles of law, have applied the burden-
shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S.
792 (1973). N.C. Dep't of Corr. v. Gibson, 308 N.C. 131, 136–41,
301 S.E.2d 78, 82–85 (1983); see Hughes v. Bedsole, 48 F.3d
1376, 1383 (4th Cir. 1995). Additionally, Plaintiff's § 1981
discrimination claim is analyzed under the same framework as
Plaintiff's Title VII discrimination claim. See Guessous v.
Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016).
The parties have treated all three causes of action together for
purposes of summary judgment, and this court will do the same.

### 1.  **Prima Facie Case**

There are two ways that Plaintiff can defeat a motion for
summary judgment in a Title VII discriminatory termination case.
Perkins v. Int'l Paper Co., 936 F.3d 196, 206 n.4 (4th Cir.
2019); Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d
310, 318 (4th Cir. 2005); Hill v. Lockheed Martin Logistics
Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc),
overruled in part on other grounds by Gross v. FBL Fin. Servs.

---

[3] In Plaintiff's response brief, she stipulated to a
dismissal of her age discrimination claims under North Carolina
law and Title VII. (Pl.'s Resp. (Doc. 36) at 9 n.3.) Therefore,
this court will consider only national origin discrimination
under Title VII and North Carolina law, and race discrimination
under § 1981.

Inc., 557 U.S. 167 (2009). First, "[a] plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." Diamond, 416 F.3d at 318. Where, as here, there is insufficient direct or circumstantial evidence of discrimination, the plaintiff may attempt to prove her claim by using the burden-shifting framework set forth in McDonnell Douglas, 411 U.S. 792 (1973).[4] In the present case, Plaintiff's opposition to Defendant's motion for summary judgment proceeds under the McDonnell Douglas framework. Thus, this court will do the same.

---

[4] Although Plaintiff complained to Spesock in December 2016 that Camara made certain comments about race and national origin to Plaintiff, (Lee Decl. (Doc. 36-1) ¶¶ 25-27), those comments are too remote to provide direct or circumstantial evidence of discrimination. McCray v. Pee Dee Reg'l Transp. Auth., 263 F. App'x 301, 306 (4th Cir. 2008) (unpublished) ("While isolated statements can constitute direct evidence of discrimination, the statements must be contemporaneous to the adverse employment action."); Loveless v. John's Ford, Inc., 232 F. App'x 229, 234 (4th Cir. 2007) (unpublished) (finding direct evidence of discrimination where the employer made comments about the employee's age during the conversation in which the employee was terminated). The most concerning comment alleged—that Camara would "take care of every Hispanic in the company[,]" (Lee Decl. (Doc. 36-1) ¶ 12 (internal quotation marks omitted)), is not probative of discrimination because Plaintiff's replacement was part of the same protected class as Plaintiff. (Spesock Dep. (Doc. 36-4) at 33 ("Ms. Lee was replaced as a corporate trainer by Rose, a 54-year-old Chinese female[.]").)

-11-

To establish a prima facie case of wrongful termination under Title VII, Plaintiff must establish:

> (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Hill, 354 F.3d at 285. Here, Defendant does not dispute that Plaintiff has satisfied the first two elements: Plaintiff is Asian and therefore a member of a protected class, and she was terminated from her employment. (Def.'s Br. (Doc. 34) at 16.)

As to the third element of a prima facie case of Title VII discrimination, the required showing that a plaintiff was performing up to the employer's legitimate expectations is a "relatively easy test[,]" Rishel v. Nationwide Ins. Co., 297 F. Supp. 2d 854, 870 (M.D.N.C. 2003) (internal quotation marks omitted) (quoting Young v. Lehman, 748 F.2d 194, 197 (4th Cir. 1984)), although "not a hollow one," Bibichev v. Triad Intern. Maint. Corp., 951 F. Supp. 2d 839, 846 (M.D.N.C. 2013).

Defendant argues that Plaintiff failed to perform her job to the legitimate expectations of Defendant. (Def.'s Br. (Doc. 34) at 16–21.) Plaintiff disagrees for several reasons. (Pl.'s Resp. (Doc. 36) at 11.) First, Plaintiff argues that Defendant never alleged Plaintiff was terminated for poor performance but rather alleged she was terminated for not being

-12-

a team player. (Id.) This argument fails because regardless of semantics, Defendant is plainly arguing Plaintiff failed to meet its legitimate expectations of job performance. (Def.'s Br. (Doc. 34) at 16.)

Second, Plaintiff argues that Defendant did not follow its employee handbook regarding written warnings for poor performance. (Pl.'s Resp. (Doc. 36) at 12.) This argument also fails because the guidelines for handling employee misconduct are discretionary. (Ex. F, Market America Employee Handbook ("Handbook") (Doc. 36-6) at 2 ("The following guidelines may be applied at the discretion of Market America's management[.]") (emphasis added).) "[N]o system is perfect" regarding employee discipline, Bibichev, 951 F. Supp. 2d at 849, and Plaintiff has not produced evidence tending to show that Defendant's expectations were not legitimate.

Third, Plaintiff argues that she was not the only one to perceive her job performance as satisfactory, citing the declaration of Qilin Cheng. (Pl.'s Resp. (Doc. 36) at 12-14.) For the reasons discussed in this court's January 20, 2022 Order, (Doc. 44), the declaration of Qilin Cheng will not be considered by this court.

In this case, Defendant has presented substantial evidence that at the time of Plaintiff's termination, Plaintiff was not meeting Defendant's legitimate expectations. Plaintiff created

-13-

the potential for significant harm to the company by failing to
adequately train at least seven new employees whose first
language was not English. (Camara Dep. (Doc. 36-3) at 42-43.)
These employees either had to attend a training in English
because Plaintiff refused to conduct the trainings in Mandarin,
or they attended a training led by Plaintiff in Mandarin, but
there were "a lot of concerns about how the quality of that
training was." (Id. at 20-21.) These concerns were not
unfounded; Camara relied on the statements of a bilingual
employee who attended Plaintiff's training and had also attended
the same training in English and reported to Camara that
Plaintiff's training was rushed and incomplete. (Id. at 25, 59.)
Plaintiff fails to respond to these allegations about refusing
to conduct trainings or that the trainings were not conducted
properly.

Plaintiff also refused to follow the demands of her
supervisor to upload her training materials to the shared
training database. (Id. at 56.) Again, Plaintiff offers no
explanation in response to this allegation. Overall, Plaintiff
was consistently resistant to Defendant's demands – that she
conduct trainings in Mandarin and follow her department's
protocol for uploading her training materials. (Id. at 21-22,
56.) Plaintiff contends she "was always a team player . . .
[and] never resisted the changes Camara wanted to make in the

-14-

training department once she became my manager. Rather, Camara did not understand how the training department functioned because she lacked experience." (Lee Decl. (Doc. 36-1) ¶ 35.) It was especially important for Plaintiff to conduct the trainings her supervisor asked her to lead because Plaintiff was the only employee in the training department who spoke Mandarin. (Camara Dep. (Doc. 36-3) at 58.) Defendant's evidence is further supported by Plaintiff's own statements acknowledging she was aware that her employer did not view her as a team player and that she had refused to conduct certain trainings that were "beneath" her. (Lee Dep. (Doc. 34-2) at 22, 25.) The McDonnell Douglas burden-shifting method of proof requires evidence sufficient to support a finding of discrimination. Where Plaintiff does not rebut her employer's assertion of expectations, no inference of discrimination arises. See Sadeghi v. Inova Health Sys., 251 F. Supp. 3d 978, 993 (E.D. Va. 2017) (citing Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981) (Where "[t]he record facts conclusively show that plaintiff's supervisors perceived him as insubordinate and disruptive, . . . plaintiff cannot establish that he was satisfying defendant's legitimate expectations at the time of his discharge."); Spease v. Pub. Works Comm'n of City of Fayetteville, 369 F. App'x 455, 456 (4th Cir. 2010)

-15-

(unpublished) (concluding that plaintiff failed to satisfy the third prong because he was insubordinate).

Moreover, that Plaintiff received positive performance reviews at some point during her employment is not sufficient to establish she was meeting her employer's legitimate expectations. "It is the 'employer's legitimate expectations at the time of the adverse employment action' that matters." Bibichev, 951 F. Supp. 2d at 847 (emphasis in original) (quoting Hill, 354 F.3d at 285). The probative value of those performance reviews is reduced by the fact that none of those reviews were conducted by Plaintiff's most recent supervisor. Plaintiff's two most recent performance reviews, although positive, were completed by a prior supervisor. (Ex. B, Job Performance Evaluations (Doc. 36-2); Spesock Dep. (Doc. 36-4) at 10-13.) Significantly, the person who completed those reviews, Sherry Spesock, noted in her deposition that she could not "give a true evaluation for [Plaintiff] in the interim" and that Spesock's personal observation of Plaintiff was not positive in nature. (Spesock Dep. (Doc. 36-4) at 17, 19.)

In contrast to the abundance of evidence presented by Defendant, Plaintiff has not presented any evidence—other than her own self-serving statements—to dispute these events. (Lee Decl. (Doc. 36-1).) It is well-established that a plaintiff's "perception of [herself] . . . is not relevant. It is the

-16-

perception of the decision maker which is relevant." <u>Smith v.</u>
<u>Flax</u>, 618 F.2d 1062, 1067 (4th Cir. 1980). Plaintiff argues that
this issue should survive summary judgment because she was not
alerted about her deficient performance. (Pl.'s Resp. (Doc. 36)
at 14-15 (analogizing the facts of this case to <u>Murry v. Jacobs</u>
<u>Tech., Inc.</u>, No. 1:10-cv-771, 2012 WL 1145938 (M.D.N.C. Apr. 5,
2012)).) However, this court is not persuaded by the cases cited
by Plaintiff for two reasons. First, the Market America Employee
Handbook is clear that "Market America may terminate an
employee's employment . . . with or without notice, at any time
for any reason." (Handbook (Doc. 36-6) at 2.) One example of
conduct that can lead to immediate dismissal is insubordination.
(<u>Id.</u>) The Handbook further states that "the Company <u>may</u>, under
appropriate circumstances, take corrective action, other than
immediate dismissal." (<u>Id.</u> at 3 (emphasis added).) Second, the
deposition testimony of Camara indicates that Camara did have
conversations with Plaintiff regarding issues with her job
performance. (<u>See</u> Camara Dep. (Doc. 36-3) at 37.) This accords
with the Handbook's policy of verbal warnings prior to
dismissal. (<u>See</u> Handbook (Doc. 36-6) at 3.)

Therefore, this court finds that Plaintiff has failed to
demonstrate that at the time of her termination she was meeting

-17-

her employer's legitimate expectations, and Defendant is entitled to summary judgment on this basis.[5]

## 2. **Legitimate, Non-Discriminatory Reason**

Even if Plaintiff could establish her prima facie case under McDonnell Douglas, she has not demonstrated that she could survive the remainder of the burden-shifting test. Once a prima facie case has been shown, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Lettieri v. Equant Inc., 478 F.3d 640, 646 (4th Cir. 2007) (internal quotation marks omitted) (quoting Hill, 354 F.3d at 285). The burden on a defendant at this stage is one of production, not persuasion, and the court

---

[5] This court notes that genuine issues of material fact likely exist as to the fourth element of a prima facie case of discrimination using the McDonnell Douglas framework. Defendant argues that Plaintiff was not replaced by an individual outside of her protected class because Rose Chaffin, an Asian female, replaced Plaintiff. (Def.'s Br. (Doc. 34) at 21–24.) On the other hand, Plaintiff argues her position was eliminated and no one was ever hired to replace her. (Pl.'s Resp. (Doc. 36) at 15 (citing Spesock Dep. (Doc. 36-4) at 30).) Thus, a genuine issue of material fact remains as to whether Plaintiff's position remained open or was filled by someone outside the protected class. Because Chaffin did not take on 100 percent of Plaintiff's job, (Camara Dep. (Doc. 36-3) at 87), this court does not find the fact Chaffin was hired to establish as a matter of law that someone in the protected class replaced Plaintiff. Ultimately, this court need not dwell on this element in light of this court's reasoning as to the third element of the McDonnell Douglas framework and the additional analysis that follows, and therefore this court will assume that this element has been met.

-18-

is not permitted to make a credibility assessment. <u>St. Mary's</u>
<u>Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993).

Defendant argues that it terminated Plaintiff because she
"was not a team player." (Def.'s Br. (Doc. 34) at 25.) Plaintiff
does not argue against a finding that Defendant has stated a
legitimate, non-discriminatory reason under <u>McDonnell Douglas</u>.
(<u>See</u> Pl.'s Resp. (Doc. 36) at 16.) Therefore, this court finds
that Defendant has met its burden of producing a legitimate,
non-discriminatory reason for terminating Plaintiff.

### 3. <u>Pretext</u>

Because Defendant has provided a legitimate explanation for
Plaintiff's termination, the burden shifts back to Plaintiff to
prove by a preponderance of the evidence that Defendant's
articulated reason is mere pretext. <u>McKiver v. Gen. Elec. Co.</u>,
11 F. Supp. 2d 755, 758 (M.D.N.C. 1977). "The final pretext
inquiry 'merges with the ultimate burden of persuading the court
that [the plaintiff] has been the victim of intentional
discrimination,' which at all times remains with the
plaintiff." <u>Merritt v. Old Dominion Freight Line, Inc.</u>, 601 F.3d
289, 294 (4th Cir. 2010) (alteration in original) (quoting <u>Tex.</u>
<u>Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)).
Thus, the question is whether Plaintiff has presented or
forecasted evidence that Defendant's reason was not the true
reason, but was a mere pretext for discrimination, sufficient to

-19-

survive summary judgment. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

Here, Plaintiff's evidence of pretext is that Camara "set out on a path to terminate [Plaintiff]." (Pl.'s Resp. (Doc. 36) at 17.) Specifically, Plaintiff alleges that Camara "stripped [Plaintiff] of her MPCP training responsibilities," "began to make unreasonable demands of [Plaintiff]" such as requiring Plaintiff to work late hours, and "accused [Plaintiff] of 'dumping UFO Services Training on [Camara]' despite the fact that [Plaintiff] had been told to cease conducting" that training. (Id.) Plaintiff further alleges that Camara described Plaintiff and Camara's work issues as "cultural differences[,]" implying "that the racial differences between [Camara] and [Plaintiff] were a root source of Camara's inability to work with her." (Id. at 17–18 (internal quotation marks omitted).)

There are several problems with Plaintiff's evidence. First, Plaintiff's evidence of pretext is supported only by her own statements. Plaintiff's self-serving assessment of her own job performance and the reason for her termination is not enough to carry her burden of establishing pretext. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959, 960 (4th Cir. 1996) (finding the plaintiff's "unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers" insufficient to establish

-20-

pretext at summary judgment for a claim of sex discrimination by failure to promote); see also Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988) (plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact").

Second, only one of those allegations can be considered as potential evidence of pretext: Camara's statement to Plaintiff that they could not work well together because of "cultural differences." The other allegations—that Camara took away some of Plaintiff's job responsibilities and required Plaintiff took work long hours—are not tied to any discriminatory motive. "Title VII does not protect employees from all unfair or unprofessional treatment, but only from intentional discrimination on the basis of 'certain, discreet classifications.'" Porter v. Nat'l Con-Serv, Inc., 51 F. Supp. 2d 656, 660 (D. Md. 1998) (quoting Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998)). As a matter of law, Camara's isolated statement regarding "cultural differences," which occurred about eight months prior to Plaintiff's termination, (see Camara Dep. (Doc. 36-3) at 96 (noting Plaintiff believed the "cultural differences" comment was made in December 2016)), is insufficient evidence of pretext to survive summary judgment. Although isolated statements can constitute evidence of discrimination, such statements must be

-21-

contemporaneous to the adverse employment action. Compare McCray, 263 F. App'x at 306 (finding isolated statements from the defendant too remote from termination of black executive director to serve as evidence of discrimination), with Loveless, 343 F. App'x at 234 (discriminatory statements regarding the plaintiff's age occurring during the plaintiff's termination meeting were evidence that the plaintiff's age was a motivating factor in the defendant's decision to terminate the plaintiff). Here, although Camara was a decisionmaker, Plaintiff does not contend that this statement was made contemporaneous to her termination.

Defendant has provided a legitimate reason for Plaintiff's termination that Plaintiff cannot dismiss as pretextual. Summary judgment is appropriate here because "the non-moving party cannot rely solely on unsupported assertions to demonstrate that a genuine issue of material fact exists." Brown v. Sears Auto. Ctr., 222 F. Supp. 2d 757, 761 (M.D.N.C. 2002).

### B. Section 1981 Retaliation Claim

Plaintiff argues that Defendant retaliated against her in violation of § 1981 when it terminated her after she complained to her supervisor that Camara discriminated against Plaintiff because of Plaintiff's race. (Pl.'s Retaliation Br. (Doc. 45) at 1-3.) Plaintiff argues that after she complained, Camara began retaliating against her, and ultimately fired her. (Id. at 3.)

-22-

"A plaintiff may prove that an employer took action with
. . . retaliatory intent through direct evidence or through the
burden-shifting framework of McDonnell Douglas." Strothers v.
City of Laurel, 895 F.3d 317, 327 (4th Cir. 2018) (citation
omitted). To establish a prima facie case of § 1981 retaliation
under the McDonnell Douglas framework, an employee must show
"(1) she engaged in a protected activity; (2) the employer acted
adversely toward her; and (3) there was a causal connection
between the protected activity and the asserted adverse action."
Id. (internal quotation marks omitted) (quoting Ziskie v.
Mineta, 547 F.3d 220, 229 (4th Cir. 2008)). If the employee is
able to meet her burden of showing a prima facie case, "[t]he
burden then shifts to the [employer] to show that its
purportedly retaliatory action was in fact the result of a
legitimate non-retaliatory reason." Foster v. Univ. of Md.-E.
Shore, 787 F.3d 243, 250 (4th Cir. 2015). "If the employer makes
this showing, the burden shifts back to the plaintiff to rebut
the employer's evidence by demonstrating that the employer's
purported nonretaliatory reasons were not its true reasons, but
were a pretext for discrimination." Id. (internal quotation
marks and citation omitted).

This court finds summary judgment should be granted as to
Plaintiff's § 1981 retaliation claim. Even if Plaintiff has
established a prima facie case of retaliation, Plaintiff has

-23-

failed to produce evidence demonstrating Defendant's stated reason for terminating her was pretextual. Plaintiff may prove pretext by showing that the alleged nondiscriminatory "explanation [for termination] is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." Lloyd v. New Hanover Reg'l Med. Ctr., No. 7:06-CV-130-D, 2009 WL 890470, at *5 (E.D.N.C. Mar. 31, 2009), aff'd, 405 F. App'x 703 (4th Cir. 2010) (internal quotation marks omitted) (quoting Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004)). For the same reasons discussed supra Part III.A.3, Plaintiff has not done so. For this reason, Plaintiff's retaliation claim must fail. Accordingly, summary judgment should be granted in favor of Defendant as to Plaintiff's § 1981 retaliation claim.

IV.  **CONCLUSION**

For the reasons set forth above, this court finds that Defendant's Motion for Summary Judgment, (Doc. 33), will be granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (Doc. 33), is **GRANTED.**

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

-24-

This the 16th day of February, 2022.

_____
United States District Judge